IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MALIK ROBERTSON, | : | |
| Petitioner, | : | CIVIL ACTION |
|  | : | |
|  | : | NO. 13-2657 |
| vs. | : | |
|  | : | |
| COURT OF COMMON PLEAS, PHILADELPHIA COUNTY, et al., | : | |
|  | : | |
| Respondents. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                     **SEPTEMBER 3, 2013**

Presently before this Court is Petitioner, Malik Robertson's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, the Response of the Philadelphia District Attorney's Office ("Respondent"), and the Reply of Petitioner. For the reasons set forth below, the Petition is denied.

**I.      FACTS AND PROCEDURAL HISTORY**

Petitioner is currently on bail awaiting retrial in a case in which he was charged with several criminal offenses that arose out of a home invasion and shooting on June 24, 2011. The matter is pending in the Court of Common Pleas of Philadelphia County (Commonwealth v. Malik Robertson, CP-51-CR-0010597-2011).

Petitioner is charged with Attempted Murder, Conspiracy, Aggravated Assault, and weapons' charges stemming from an incident on the above date in which he and two companions allegedly entered a house occupied by sleeping people in South Philadelphia. Respondent asserts

the following facts. Petitioner and his co-conspirators entered the premises where they shot Lekirr Brown in the eye, stomach, and leg as he lay in bed asleep. (Resp. at 2.) A blue car was seen speeding off immediately after the shooting. (Id.) Police in the area were notified immediately and encountered a blue car parked in the middle of a street one block from the shooting. (Id.) Petitioner was arrested running away from the car, and within minutes he was identified by several witnesses as one of the three men running out of the house after the shooting. (Id.) Police seized the vehicle and subsequent to obtaining a warrant, searched it twice. (Id.) The first time they found, among other things, latex gloves, and Petitioner's driver's license. (Id.) However, the police missed two hidden guns. (Id.) A few days later, at the impound lot, they searched again and found two hidden guns. (Id) The police matched one of these guns to a bullet pulled from the victim's body. (Id.)

Respondent asserts that on October 6, 2011, before trial, the Commonwealth turned over to Petitioner's counsel a discovery packet which included a search warrant for the car, and items found in the car including Petitioner's driver's license, a black shirt, and several cell phones. (Id. at 3; Ex. C.) Respondent states that "although the warrant return photocopy given to defense counsel was part of the discovery packet contained handwriting in the 'Property Seized' section, it was illegible," and "[c]ounsel did not ask for a clearer copy or otherwise inquire what items police found in the car." (Id. at 3.)

A jury trial commenced on May 10, 2012, presided over by the Honorable Barbara A. McDermott.[1] On Friday, May 11, 2012, an evidentiary issue arose that caused the Court to doubt

---

[1] Petitioner was represented by Christopher D. Warren, Esq., who continues to represent him in the instant petition.

whether trial could continue, and the "Court alerted counsel and asked that they come prepared the next Monday to discuss the issue and discuss any possible remedies short of a declaration of a mistrial." See Commonwealth v. Robertson, CP-51-CR-0010597-2011, 84 EDM 2012, at 1. On Monday, May 14, 2012, after conferring with counsel, Judge McDermott determined that "it was manifestly necessary to declare a mistrial due to [defense] counsel's discovery and trial preparation failures and the severe extent to which they hampered the defense." (Id.)

As will be discussed, infra, Judge McDermott issued a written decision on September 12, 2012, and explaining that on May 11, 2012, during the trial, Philadelphia Police Officer Flade, a crime unit officer, was scheduled to testify. (Id. at 2.) Officer Flade, one of the final Commonwealth witnesses, brought with him several color photographs that he had taken of the trunk of the car in question where the two handguns were found. (Id.) The photos also depicted Petitioner's driver's license. (Id.) Judge McDermott stated that neither the Commonwealth nor the defense had been aware of precisely what these photos depicted, but they were consistent with the search warrant, which had listed the items found in the vehicle, and had been provided in the discovery package provided by the Commonwealth. (Id.) Respondent asserts that the police had not previously given these photos to the prosecution and the photos were not mentioned in any police paperwork. (Resp. at 10.) Respondent further states that the Commonwealth immediately turned over the photos to defense counsel, who objected to them, and claimed that the non-disclosure of the photos constituted a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963) ("the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."), despite the fact that counsel failed

3

to file any pretrial discovery request. (Id.) Judge McDermott wrote that during sidebar, it became apparent that a copy of the search warrant that was provided in discovery was not legible to the defense, but the defense had not requested that a legible copy be provided despite the contents of the trunk being of obvious importance to the defense's case. See Robertson, 84 EDM 2012 at 3.

As noted, on May 14, 2012, in a discussion with counsel, Judge McDermott expressed the Court's concern that a mistrial was necessary because defense counsel's ineffectiveness had already necessitated a new trial in the almost certain event of a conviction. Id. During this discussion, Judge McDermott stated that the Commonwealth agreed that a mistrial was necessary, and the defense "made absolutely no argument as to alternative remedies, and agreed with the Court's assessment of the facts." Id. at 4. Judge McDermott then found that "manifest necessity" had been shown and *sua sponte* declared a mistrial. Id.

On June 19, 2012, defense counsel filed a motion to dismiss with the Philadelphia Court of Common Pleas on double jeopardy grounds. Judge McDermott denied the motion on July 20, 2012, finding that the motion was frivolous, and rendered her findings in a written decision on September 12, 2012.[2] Id. at 1. In her decision, Judge McDermott noted that recently in Commonwealth v. Orie, 22 A.3d 1021 (Pa. 2011), the Pennsylvania Supreme Court clarified the procedures for seeking a stay pending retrial after a trial court denies a double jeopardy motion

---

[2] On August 20, 2012, Petitioner filed a Petition for Review of the trial court's determination of frivolousness in the Superior Court, and complained that there was no trial court opinion. (Resp., Ex. P at 4.) However, defense counsel apparently had failed to notify the trial court of the petition for review as was required under state law. As noted, Judge McDermott issued her written decision on September 12, 2012.

following a mistrial, and that she followed this procedure.[3] The Superior Court declined to review Judge McDermott's decision by order dated October 23, 2012. (Resp., Ex. Q at 14a.) On November 26, 2012, Petitioner filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania. That Court denied the Petition by order dated March 20, 2013. (Resp., Ex. R.)

On May 14, 2013, Petitioner filed the instant habeas petition under 28 U.S.C. § 2241,[4] seeking to bar the state retrial on double jeopardy grounds.[5] (Doc. No. 1.) Petitioner also filed a Motion to stay state court proceedings under 28 U.S.C. § 2251.[6] Respondent filed a Response on July 7, 2013, and Petitioner filed a Reply to the Response on August 7, 2013. (Doc. Nos. 7, 9.)

---

[3] In Orie, the Court confirmed that when a trial court has determined that a double jeopardy motion of this type is frivolous, the determination is "non-appealable- but subject to a narrow appellate review" at the Superior Court via the petition for review procedures outlined in Chapter 15 of the Rules of Appellate Procedure. 22 A.3d at 1026. This case will be discussed in more detail, infra.

[4] Section 2241 provides in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
>
> ———
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

[5] The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense. United States v. Dinitz, 424 U.S. 600, 606 (1976). The Clause, however, does not always bar a new trial after a mistrial has been declared. Where the mistrial is not requested by the defendant, a retrial is permitted if there is a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated. Id. at 607.

[6] Respondent asserts that the Motion for Stay is unnecessary because the Court of Common Pleas has delayed, and will continue to delay, the start of trial pending this Court's review of the instant habeas Petition. (Resp. at 19.)

## II. DISCUSSION

### A. Section 2241 or Section 2254 Standard of Review

Petitioner and Respondent first disagree on whether § 2241 or § 2254 is the proper avenue by which to challenge pretrial detention, including when such challenges are based on double jeopardy grounds. "For state prisoners, federal habeas corpus is substantially a post-conviction remedy." Moore v. DeYoung, 515 F.2d 437, 448 (3d Cir.1975) (citing 28 U.S.C. § 2254; Peyton v. Rowe, 391 U.S. 54 (1967)). "Nevertheless, jurisdiction to issue the writ exists in the federal courts before a judgment is rendered in a state criminal proceeding" pursuant to 28 U.S.C. § 2241. Id.

Here, Petitioner asks this Court to employ a de novo standard of review of the state court decision, reasoning that only Section 2254 petitions receive deference under the Antiterrorism and Effective Death Penalty Act, and that there was no state court adjudication on the merits. Whether § 2254 or § 2241 applies greatly affects a habeas court's standard of review in that the deference normally accorded state court judgments under § 2254 does not apply. Instead, a habeas court employs a de novo review for claims made pursuant to § 2241. Walck v. Edmondson, 472 F.3d 1227, 1234 (10th Cir. 2007).

Respondent asserts that there is a circuit split on whether a habeas petition, such as the one before us, should be decided under § 2254 or § 2241, and that the United States Court of Appeals for the Third Circuit ("Third Circuit") has not yet ruled on this issue. Respondent urges this Court to "adopt the Sixth Circuit's approach of evaluating a pre-trial double jeopardy habeas petition under the deferential AEDPA standards." See Johnson v. Karnes, 198 F.3d 589, 593 (6th Cir. 1999). Petitioner argues that, although the Third Circuit has not ruled on this issue,

6

Judge Michael Baylson determined in Green v. Ct. of Common Pleas, No. 08-1749, 2008 WL 2036828, at *1 (E.D. Pa. May 8, 2008), that such a claim is treated under § 2241.[7] Petitioner also asserts that there really is no circuit split because the Sixth Circuit recently held in Phillips v. Court of Common Pleas, 668 F.3d 804 (6th Cir. 2012) that "habeas petitions governed by § 2241 are not subject to the heightened standards contained in § 2254(d)."[8] Id. at 810. However, while it is likely that the Third Circuit would rule that § 2241 habeas claims are to be reviewed under a de novo standard of review, we need not rule on this issue at this time because we decline to rule on the merits of the instant double jeopardy claim for the reasons that follow.

### B. Exhaustion of State Remedies

It is well settled that the exhaustion of state court remedies requirement for habeas corpus petitions is not jurisdictional. The requirement is instead "rooted in considerations of federal-state comity" and is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." See Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995); Landano v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990). The United States Supreme Court has stated that "[t]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

With regard to a Section 2241 petition, the exhaustion requirement, although not

---

[7] Respondent notes that Green was appealed, but the Third Circuit did not made a decision because Petitioner voluntarily moved to dismiss his appeal after accepting a negotiated guilty plea on retrial in state court. (Resp. at 20 n.7.)

[8] Other circuits have made this determination as well. See Walck, 472 F.3d at 1234-35; McNeely v. Blanas, 336 F.3d 822, 824, n.1 (9th Cir. 2003); Jacobs v. McCaughtry, 251 F.3d 596, 597 (7th Cir.2001); Stringer v. Williams, 161 F.3d 259, 261-62 (5th Cir.1998).

mentioned in 28 U.S.C. § 2241(c)(3), which empowers a district court to issue the writ in a pretrial context, stems from 28 U.S.C. § 2254(b)(1)(A), and provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Third Circuit has recognized that, "although there is a distinction in the statutory language of §§ 2254 and 2241, there is no distinction insofar as the exhaustion requirement is concerned." Moore, 515 F.2d at 442; see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Thus, Petitioner must have exhausted his state court remedies with regard to his double jeopardy claim before this Court can consider its merits.

Petitioner asserts that he has exhausted his state court remedies because he appealed Judge McDermott's decision to the Pennsylvania Superior and Supreme Courts. Petitioner relies heavily on Judge Baylson's decision in Green, 2008 WL 2036828, at *1, to support his argument.[9] In Green, Judge Baylson noted that Pennsylvania follows a procedure pursuant to Commonwealth v. Brady, 508 A.2d 286, 290 (Pa. 1986), that, in these kinds of cases challenging double jeopardy, the trial court has the first opportunity to identify claims as frivolous, which prevents litigants from interrupting the trial process with an appeal. Green, 2008 WL 2036828, at *3. The Court found that in following this procedure, Green "presented all his federal constitutional claims in state court and therefore 'exhausted' all state court remedies." Id. at 4.

---

[9]It appears that the question of whether a petitioner who files a pretrial Section 2241 habeas petition raising a double jeopardy claim and has appealed the state trial court's determination that his double jeopardy claim is frivolous to both the Superior and Supreme Courts of Pennsylvania has exhausted his state remedies is one of first impression in this Circuit.

8

A few years later, in Orie, 22 A.3d at 1021, the Pennsylvania Supreme Court clarified questions left open by Brady. The Court stated that:

> the Brady Court envisioned a preliminary avenue for limited appellate review of the trial court's written finding that a defendant's double jeopardy challenge was frivolous via a stand-alone stay procedure, which would be unrelated to a pending appeal as of right. The Brady Court did not further address exactly how such stay reviews would proceed. Nor did the Court directly address which appellate court would conduct the review-via-stay, albeit the Court spoke generically of a stay "from an appellate court" and later adverted to "the appellate court in which a stay is sought," without suggesting that all such appeals would proceed directly to this Court.

Id. at 1025. The Court held that "[w]e embrace the Brady Court's view that a defendant, who has had a pre-trial double jeopardy challenge dismissed as frivolous, may seek preliminary appellate review of that conclusion as of right." Id. at 1026.

In the instant case, Respondent asserts that "Judge Baylson may well have changed his approach to exhaustion had Orie been in existence" at the time of his decision. (Resp. at 25 n.8.) Petitioner responds that Orie would not have changed Judge Baylson's determination of exhaustion in Green because it did not fundamentally change Pennsylvania law governing interlocutory review of double jeopardy claims, but merely clarified the procedure that must be used when the trial court labels the claim as frivolous. (Reply at 9.) While we certainly cannot say that Orie would have changed Judge Baylson's determination of exhaustion in Green, we do find that Orie supports our determination here that Petitioner has not exhausted his state court remedies. Orie stated that:

> We emphasize that the appellate court's consideration of a petition for review in the Brady setting is preliminary in nature. Thus, in a case such as this one, it does not answer the merits of the underlying question of whether the trial court abused its discretion in declaring a mistrial. That

9

> question will be answered if the appeal is permitted to go forward under
> Bolden.[10] Again, at the Brady petition for review stage, the appellate
> court's focus is on the finding of frivolousness.

22 A.3d at 1027.

Petitioner interprets this language as affording the "state courts the opportunity to review the claim on the merits if they so choose." (Reply at 11.) Petitioner further asserts that "the fact that the state courts declined to review the claim on the merits, however, does not render the claim unexhausted." (Id.) We, however, disagree and find no language in Orie indicating that the Pennsylvania appellate courts had the discretion to review Petitioner's double jeopardy claim on its merits. We read Orie as holding that a state appellate court's review of a trial court's determination that a claim of trial court abuse in declaring a mistrial is frivolous is strictly a "preliminary" one and solely limited to the issue of frivolousness. The state appellate courts do not have the discretion to address the merits of the issue upon a finding of frivolousness by the trial court. Thus, if a petitioner losses his appeal of a finding of frivolousness by the trial court, he would have the opportunity after retrial to raise a claim of double jeopardy on appeal and have that claim heard on its merits by the Pennsylvania appellate courts.

This is precisely the situation here. As noted earlier, Petitioner filed a motion to dismiss with the trial court on double jeopardy grounds. Judge McDermott denied the motion finding that the motion was frivolous. Petitioner appealed that decision to the Pennsylvania Superior Court who denied the petition in a one sentence order. See Commonwealth v. Robertson, No. 84 EDM 2012. Similarly, the Pennsylvania Supreme Court denied Petitioner's Petition for Review

---

[10]Commonwealth v. Bolden, 373 A.2d 90 (Pa. 1977).

declining to review the finding of frivolousness. See Commonwealth v. Robertson, No. 206 EM 2012. Thus, neither the Pennsylvania Superior or Supreme Courts addressed the merits of Petitioner's claim of double jeopardy.

To satisfy the exhaustion requirement, a federal habeas petitioner must present the facts and legal theory associated with each claim through "one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844–45; see also Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). According to 28 U.S.C. § 2254(c), a petitioner is not deemed to have exhausted the remedies available to him if he has a right under the state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c); Castille v. Peoples, 489 U.S. 346, 350 (1989). With these principles in mind, we conclude that petitioner has not exhausted his state court remedies. While it can be argued that the issue of the frivolousness of Petitioner's double jeopardy claim made it through "one complete round of the State's established appellate review process," it cannot be said that the merits of this claim did the same. As the United States Supreme Court stated in O'Sullivan, "the exhaustion doctrine, in other words, turns on an inquiry into what procedures are 'available' under state law." 526 U.S. at 847. As noted above, the Court also stated that "[t]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." Id. at 845. Here, the Pennsylvania Superior and Supreme Courts strictly followed the procedure for limited review of a trial court's finding of frivolousness set down by Orie. The Courts did not go to the merits of the double jeopardy claim. Thus, we cannot find that the state court has had a "full and fair opportunity to resolve" Petitioner's double jeopardy claim before this Court can address it on its merits. We are of the

11

opinion that Petitioner has a remedy "available" to him in the form of a direct appeal to the Pennsylvania appellate courts if he is convicted in a retrial. Accordingly, we find that Petitioner has not exhausted his state remedies.

### C. Extraordinary Circumstances

Petitioner argues that the only way he can obtain pretrial federal habeas review of his double jeopardy claim is through a finding by this Court that he has exhausted his state remedies under the procedure set out in Orie. However, a finding that Petitioner has not exhausted his state remedies does not mean that pretrial federal habeas review of a double jeopardy claim can never be available to Pennsylvania defendants. Indeed, a habeas court can review the merits of a claim without exhausting that claim if "extraordinary circumstances" are present. See Moore, 515 F.2d at 442. Moore identified a few situations which could constitute "extraordinary circumstances" justifying pre-exhaustion federal habeas relief such as "delay, harassment, bad faith or other intentional activity." Id. at 447 n.12.

Here, however, we find no extraordinary circumstances to excuse the exhaustion requirement. The record before us reveals no evidence of "delay, harassment, or bad faith" on the part of the prosecution. Moreover, Pennsylvania's pretrial double jeopardy review process, as discussed above, adequately protected Petitioner's rights at the state level. We make this determination because the procedure is exactly the same here in federal court. In Abney v. United States, 431 U.S. 651 (1977), the Supreme Court held that a federal district court's pretrial order denying a motion to dismiss an indictment on the grounds of double jeopardy was an immediately appealable decision, reasoning that "the rights conferred on a criminal accused by the double jeopardy clause would be significantly undermined if appellate review of double

jeopardy claims were postponed until after conviction and sentence." Id. at 660.

In United States v. Leppo, 634 F.2d 101 (3d Cir. 1980), the Third Circuit was presented with the dilemma of how to balance the principles underlying both Abney and the rule that a trial court is divested of jurisdiction over a case when a notice of appeal is filed against the public policy favoring the rapid disposition of criminal cases. The defendant in Leppo was prosecuted for extortion and obstructing interstate commerce. Id. at 103. On the basis of certain suspect testimony proffered by the prosecution, the district judge granted defendant's motion for a mistrial. Id. Six weeks after the court declared a mistrial, and had already listed the case for retrial, defendant moved for a dismissal of the indictment on grounds of double jeopardy. Id. The trial court rejected that motion and plaintiff sought interlocutory review pursuant to Abney. Id. While ordinarily the filing of an appeal on the double jeopardy question would have divested the district court of jurisdiction to proceed any further, the trial court in Leppo found the appeal to be frivolous and, therefore, retained jurisdiction to retry the defendant. Concerned that the right to seek interlocutory review of double jeopardy claims provides "criminal defendants with an effective new tool for delaying their trials for long periods of time," the Third Circuit affirmed and held that "an appeal from the denial of a double jeopardy motion does not divest the district court of jurisdiction . . . if the district court has found the motion to be frivolous and supported its conclusions by written findings." Id. at 104-105. Thus, the district court can immediately retry a defendant upon a finding of frivolousness and the appeal of the merits of the double jeopardy claim is postponed until after the conviction, if any. Id. In fact, this is precisely what happened in Leppo. The Defendant was convicted upon retrial and the Third Circuit subsequently reviewed the merits of his double jeopardy claim. See United States v. Leppo, 641 F.2d 149 (3d

13

Cir. 1981).

Accordingly, since federal district courts in this Circuit are not prevented from immediately retrying a defendant upon a finding that a double jeopardy claim is frivolous and the Third Circuit has determined that such a procedure adequately protects a defendant's double jeopardy rights under Abney, 431 U.S. at 651, we cannot find that such a procedure in Pennsylvania constitutes "extraordinary circumstances" to excuse the exhaustion requirement. Thus, like the procedure in our Circuit, we will not prevent Pennsylvania from retrying Petitioner before its appellate courts can rule on the merits of his double jeopardy claim.

### D. The Younger Doctrine

We also decline to consider the merits of Petitioner's double jeopardy claim under the Younger doctrine. See Younger v. Harris, 401 U.S. 37 (1971). The United States Supreme Court has required a showing of "unusual circumstances" before a federal court will be permitted to enjoin on-going state criminal proceedings. Id. at 54. The Younger doctrine provides that a federal court may properly abstain from exercising jurisdiction when to do so would impermissibly interfere with ongoing state court proceedings. See Williams v. Red Bank Bd. of Educ., 662 F.2d 1008 (3d Cir. 1981). Similar to the exhaustion requirement, "[t]he rule barring pretrial intervention into pending state criminal proceedings by way of federal habeas corpus or otherwise is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." Evans v. Ct. of Common Pleas, 959 F.2d 1227, 1234 (3d Cir. 1992) (citing Younger, 401 U.S. at 44). Only where there has been a "showing of bad faith, harassment, or any other unusual circumstance that would call for

14

equitable relief" is it appropriate for a federal court to enjoin or otherwise interfere in state criminal proceedings. Younger, 401 U.S. at 54. Moreover, the Third Circuit has stated that "[i]n no area of the law is the need for a federal court to stay its hand pending completion of state proceedings more evident than in the case of pending criminal proceedings." Evans, 959 F.2d at 1234.

As we determined earlier, we first find that there is no evidence of bad faith or harassment on the part of the prosecution in this case. In fact, in her decision finding that Petitioner's double jeopardy claim was frivolous, Judge McDermott determined that the granting of the mistrial was necessary due to failures of the defense. She stated that "it was manifestly necessary to declare a mistrial due to counsel's discovery and trial preparation failures and the severe extent to which they hampered the defense." See Robertson, CP-51-CR-0010597-2011, 84 EDM 2012, at 1.

We also note that several courts have recognized that a colorable double jeopardy clause claim is an example of one of the very few "unusual circumstances" enunciated in Younger that justifies federal court intervention in a state court proceeding. See Walck, 472 F.3d at 1233-34; Gilliam v. Foster, 63 F.3d 287, 289-90 (4th Cir. 1995); Mannes v. Gillespie, 967 F.2d 1310, 1312 (9th Cir. 1992).[11] However, this Circuit has yet to adopt this position, and in light of our findings above, we decline to do so here under the circumstances of this case.

Thus, we find that the petition does not present any exception to the Younger doctrine

---

[11]It is noted that Judge Baylson in Green adopted this position and addressed the merits of the double jeopardy claim. 2008 WL 2036828, at *3. However, as noted earlier, Green was appealed, but the Third Circuit did not make a decision because petitioner voluntarily moved to dismiss his appeal.

justifying federal intervention in an ongoing state criminal proceeding. The petition does not set forth any bad faith, harassment, or other unusual or extraordinary circumstance to warrant federal intervention in an ongoing state criminal proceeding. Therefore, we find that the Younger doctrine precludes federal intervention in petitioner's ongoing state court proceeding.

### III.     CONCLUSION

The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied for failure to exhaust state court remedies. In addition, we find that no "extraordinary circumstances" are present to excuse the exhaustion requirement. Moreover, we also deny the Petition under the Younger doctrine.

An appropriate Order follows.